**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

**SARAETTE CRUMP**                                                                                          **PLAINTIFF**

Vs.                                        **5:12-cv-00233 JWC**

**SOCIAL SECURITY ADMINISTRATION**                                               **DEFENDANT**

# OPINION

Plaintiff, Saraette Marie Crump, seeks judicial review of the denial of her claims for a period of disability and disability insurance benefits and for supplemental security income benefits.[1] Judicial review of the Commissioner's denial of benefits examines whether the decision is based on legal error and whether the findings of fact are supported by substantial evidence in the record as a whole. *Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009); see 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "less than a preponderance but is enough that a reasonable mind would find it adequate to support the conclusion." *Wiese*, 552 F.3d at 730. In its review, the Court must consider evidence supporting the Commissioner's decision as well as evidence detracting from it. Id. That the Court would have reached a different conclusion is not a sufficient basis for

---

[1] The parties have consented to the jurisdiction of the magistrate judge. (doc.16)

reversal; rather, if it is possible to draw two inconsistent conclusions from the evidence and one of these conclusions represents the Commissioner's findings, the denial of benefits must be affirmed. Id.

An Administrative Law Judge (ALJ) held a hearing on October 5, 2010, and rendered an unfavorable opinion on November 9, 2010, which has become the final opinion of the Commissioner.

Plaintiff was 29 years old at the time of the hearing. She has a high school education and past relevant work as a receptionist, stocker, cashier and assembly line worker. In 1995, she underwent amputation of her right leg above the knee, due to sarcoma. In 1996 doctors removed part of the upper left lobe of her lung due to a cancer lesion that was apparently secondary to the sarcoma. However, a PET scan in May 2009 revealed no evidence of any metastatic lesion, so she apparently has remained cancer free. Ms. Crump continued to work despite her health problems until June 2009, when she broke the toes on her left foot. She received treatment and was cleared to return to work, "full active duty with no restriction" on October 11, 2009. [2] She has not returned to work, and alleges disability with an onset date of June 4, 2009, due to back and hip pain secondary to her amputation and problems with her prosthesis, shortness of breath on exertion and depression.

---

[2] Tr. 295.

The ALJ found Plaintiff "not disabled" at step four of the required five step analysis, finding that Plaintiff had the Residual Functional Capacity (RFC) to perform her past relevant work as a receptionist.  Plaintiff argues that the ALJ's hypothetical to the VE did not encompass all relevant impairments and that the RFC findings are unsupported by substantial evidence because the ALJ did not properly weigh and account for the medical experts' opinions regarding her mental health (depression), lung problems, and physical limitations secondary to her amputation and prosthesis (back and hip problems and pain).

## Depression

The ALJ found Ms. Crump's depression "not severe" under applicable provisions.  Plaintiff argues that the ALJ improperly discounted the information and opinion stated by Dr. Shalil Malik, M.D. and other health care providers with Southeast Arkansas Behavioral Healthcare Systems, Inc.,[3] and that he substituted his lay judgment in making that determination.

The ALJ rather extensively discussed Plaintiff's depression, acknowledging that Plaintiff had received treatment and specifically acknowledging the findings of Dr. Malik, the treating psychologist.  He discussed each of the four broad functional areas for evaluating mental disorders and gave substantial reasons for discounting any opinion that her depression would significantly interfere with her

---

[3] See Exhibits 14F and 15F.

ability to work.  The ALJ discussed Plaintiff's daily activities, which were inconsistent with severe depression.  He pointed out that her depression was related to situational stressors, such as financial disability and that the psychiatrist had noted that Plaintiff had no deficits in memory, concentration, orientation, impulse control, reasoning, insight and judgment and had never identified adaptive functioning deficits.  She had never had episodes of decompensation.  The record also demonstrates that while the depression was secondary to her physical health problems which had occurred years earlier, she continued to work until she broke her toes.  She did report that she had been depressed since the seventh grade.   She also stated in the administrative hearing that she thought she could return to work if she was able to alternate between sitting and standing.  There is ample evidence of record to support the ALJ's finding that Plaintiff's depression no more than minimally interferes with her ability to work.

## Pulmonary Function

Plaintiff did have a portion of her left lung removed in 1999 due to cancer.  Thankfully, there is no evidence of recurrence.  She complains of shortness of breath on exertion, saying she is unable to walk any substantial distance or do too much.  A pulmonary function test performed in October 2009 revealed a "moderate obstructive lung deficit."[4]  Nevertheless, the ALJ's determination that this no more

---

[4] See Exhibit 6F.

than minimally affects her ability to work is supported by substantial evidence. No doctor has stated that the condition is severe enough to require treatment. Dr. Brett Butler, an examining physician detected normal breath sounds and noted that Plaintiff complained of shortness of breath, but he did not include pulmonary problems in his diagnosis. [5] Nor did Dr. James S. Cash, Plaintiff's primary care physician. He did note shortness of breath, but this was apparently based solely on Plaintiff's subjective complaints. His examinations in January, May and August 2010 showed Plaintiff's lungs to be clear.

A chest X-Ray Dr. Cash ordered in August of that year showed no acute process. The radiologist compared this X-Ray with a chest radiograph done in July 2007 and made the following findings:

> . . . There is no new or acute lung density. Old stable linear densities noted in the left upper lung consistent with fibrotic scarring. There is no pneumothorax or pleural effusion. . . .[6]

The importance of this finding is that it shows there was no acute deterioration in lung function which rendered her unable to work as of June 4, 2009, her alleged onset date. There is clear medical evidence that the condition was substantially the same at least as early as July 2007, yet Plaintiff continued to work at a production line job more physically strenuous than that of a receptionist

---

[5] Exhibit 3F.

[6] Tr. 266.

until she left because of broken toes.

Also of importance is Ms. Crump's candid testimony at the hearing in response to the ALJ's question whether she could go back to work as a receptionist. She stated that she could "--as long as I can get up and move around some." [7] She also said her lung condition did not cause problems if she's "not doing too much." [8] Evidence in the record supports the finding that her lung condition would not preclude her past relevant work as a receptionist.

## Back and Hip Problems

The ALJ found that Ms. Crump had the RFC to perform sedentary work with a sit/stand option. Among other requirements, the sedentary work definition includes the ability to sit for up to six hours in an eight hour workday and to stand and/or walk up to two hours during an eight hour workday. Whether the alleged pain and movement limitations arising from her back and hip problems would prevent her from being able to sit and stand for these periods of time and to hold a receptionist's job is the core issue in this case.

Plaintiff suffered an above-knee amputation at an early age. She has had demonstrated problems with her prosthesis and complains of pain and limitations in her ability to sit and stand or walk. She testified that she was experiencing

---

[7] Tr. 52.

[8] Id.

increasing difficulties with pain, movement and balance in her job at Kohler before she stopped working due to the toe injury she suffered off the job.

Examining physician Dr. Brett Butler, found Plaintiff had "significant disability" in that she "cannot adequately walk and stand for extended periods," and characterized this inability as "severe." The inability to walk and stand for <u>extended</u> periods would not necessarily preclude sedentary work. He did not state an opinion as to how many hours she could sit or stand/walk during an eight hour workday. [9]

Dr. James Steven Cash, M.D., a treating physician, found Plaintiff's pain or other symptoms severe enough to "frequently" interfere with attention and concentration needed to perform even simple work tasks. Dr. Cash reported that she sit only fifteen minutes before needing to get up and stand only fifteen minutes before needing to sit down. He said that she could sit or stand/walk less than two hours in an eight hour workday, and would need to walk around every fifteen minutes for five minutes. He further found that she would need unscheduled breaks during an eight hour day, that she would need an assistive device while walking and that her leg would need to be elevated while she was sitting. [10]

The ALJ gave little weight to these opinions, citing their inconsistency with

---

[9] Exhibit 3F.

[10] Exhibit 16F.

Plaintiff's hearing testimony, her daily activities and the objective medical evidence.  He pointed out that the doctors did not cite to medical tests or diagnostic data, and that Ms. Crump was able to work for an extended period after her amputation and lung surgery.

The more relevant report is that of Dr. Cash.  He found significant restrictions which would preclude employment.  However, an ALJ may discount the opinions of even treating physicians if he gives good reasons to do so.  "*Brown v. Astrue*, 611 F.3d 941, 951 (8th Cir. 2010)  The ALJ gave adequate reasons for discounting his opinion.  Plaintiff reported rather extensive daily activities.  The record shows that following her amputation and lung surgery, she worked at jobs more strenuous than that of a receptionist for several years and left employment because of a separate injury (from which she fully recovered).  She candidly stated in her testimony at the hearing that she thought she could perform as a receptionist as long as she could get up and move around.  Dr. Cash's report seems to be based solely on her subjective complaints and, in fact, the record is devoid of any objective findings supporting the level of impairment he found.  X-Rays of both hips in October 2009 were negative, and comparison with films taken September 7, 2006, showed no changes.  Lumbar views taken the same date were negative except for "very mild dextroscoliosis." (later determined to be the result

of positioning, not really scoliosis). [11] Additional X-Rays taken in January and August 2010 were also negative. [12] None of the X-Rays showed arthritis, deterioration, disc problems, or other problems. Based on the entire record, the ALJ's discounting of Dr. Cash's opinion was justified and his finding as to Plaintiff's ability to sit and stand is supported by the overall record. It follows that his hypothetical question to the Vocational Expert at the hearing properly included all relevant impairments.

## Conclusion

The Court finds that the ALJ's decision is supported by substantial evidence and there has been no allegation of legal error. Therefore, this case must be dismissed with prejudice.

IT IS SO ORDERED this 5th day of June, 2013.

_____
UNITED STATES MAGISTRATE JUDGE

---

[11] Exhibit 5F.

[12] Exhibit 13F, Tr. 265-267.